Voto particular disidente emitido por el
Juez Presidente Señor Hernández Denton,
al cual se une la Juez Aso-ciada Señora Rodríguez Rodríguez.
Disentimos del proceder errado de una mayoría de los miembros de este Tribunal, quienes, partiendo de una pre-misa que distorsiona la realidad y apartándose de la tradi-ción de lograr consenso al emprender la tarea de modificar las reglas que dirigen nuestros procesos internos, hoy en-miendan la Regla 5 del Reglamento de este Foro, 4 L.P.R.A. Ap. XXI-A.
I
La Regla 5(a) de nuestro Reglamento dispone que “[l]os casos para decisión en los méritos se asignarán a los(as) jueces por el Juez Presidente o, en su defecto, por el(la) Juez Asociado(a) de mayor antigüedad ...”. 4 L.P.R.A. Ap. XXI-A. Sin embargo, mediante la enmienda que hoy se adopta, se modifica la regla para disponer que los casos para decisión en los méritos se asignarán “por el Juez Pre-sidente cuando éste haya votado con la mayoría en la con-ferencia semanal del Pleno del Tribunal”, o cuando éste no haya votado con la mayoría, “por el(la) Juez(a) Asociado(a) de mayor antigüedad que haya votado con la mayoría”. Re- *466 solución, pág. 463. La razón que alegadamente motiva a una mayoría de los miembros del Tribunal para impulsar esta enmienda —de forma repentina y sin discusión algu-na— es atender y corregir una “situación” que, en realidad, no existe.
Específicamente, los compañeros Jueces Asociados que han endosado con su voto la enmienda a la Regla 5(a), supra, han consignado en la Resolución de epígrafe un mé-todo de asignación de opiniones que supuestamente se si-gue en este Tribunal. Señalan que en la reunión semanal del Pleno, una vez se discuten los recursos y se vota para expedirlos o denegarlos, el Juez Presidente procede a de-signar el juez o la jueza que redactará la opinión o sentencia. Ello, según se expone en la Resolución que hoy se aprueba, crea una “situación” en la cual el Juez Presi-dente asigna un caso para la redacción de una opinión o sentencia aunque no comparta el criterio mayoritario, a pesar de que al Juez Asociado de mayor antigüedad que votó en la mayoría se le haría más fácil identificar el fun-damento mayoritario para llegar a un resultado. Nada más lejos de la verdad.

Como bien sabemos todos los que integramos este Foro y participamos de las reuniones semanales de pleno, el mé-todo de asignación de opiniones descrito hoy por los compa-ñeros de la mayoría no es, ni ha sido, el que se sigue actual-mente en este Tribunal. En ese sentido, la enmienda parte de una premisa ficticia que vicia por completo cualquier fundamento que pueda esbozarse para modificar el sistema de asignación de opiniones que de costumbre se ha seguido en este Tribunal.

Desde que el entonces Juez Presidente Señor José Trías Monge nos juramentó al cargo de Juez Asociado de este Tribunal en 1985, e incluso a lo largo de las presidencias de los Jueces Presidentes Víctor Pons Núñez y José Andréu García, de la Jueza Presidenta Miriam Naveira Merly, de este servidor, y de las presidencias interinas de los Jueces *467 Carlos J. Irizarry Yunqué, Antonio S. Negrón García y Francisco Rebollo López, el método de asignación de casos que por costumbre han seguido los Jueces Presidentes —al amparo de la propia Regla 5(a) de nuestro Reglamento, supra— se ha basado en un mecanismo de rotación equita-tiva mediante el cual se le asigna a todos los Jueces un mismo número de casos para informarlos ante la reunión semanal del Pleno del Tribunal. Si la recomendación de ese juez o de esa jueza al informar el caso es endosada por la mayoría, dicho juez se convierte en el juez ponente de la Resolución del Tribunal en la que se expide o deniega el auto de certiorari o se emite una orden para mostrar causa. Posteriormente, cuando el caso acogido quede sometido, se le asigna a ese mismo juez para su disposición en los méritos. Por el contrario, si la recomendación del Juez o de la Jueza que informa el caso ante el Pleno no es avalada por una mayoría, la costumbre siempre ha sido que en esa misma reunión se reasigna el caso a uno de los Jueces cuyo criterio coincida con el de la mayoría. Será entonces dicho Juez quien emitirá la Resolución del Tribunal y dispondrá del caso cuando éste quede sometido en los méritos. De ordinario, esta reasignación se lleva a cabo mediante el consenso del propio Pleno.
Es decir, el sistema actual parte de un criterio objetivo y equitativo en la distribución de casos. A su vez, provee su-ficiente flexibilidad para que las opiniones puedan ser asignadas según el criterio mayoritario, no por fíat presi-dencial, como aparentan aseverar los compañeros Jueces Asociados que hoy deciden enmendar la Regla 5(a) de nuestro Reglamento, supra. Incluso, la reasignación de opi-niones puede ocurrir después que el Juez ponente circula su ponencia en atención, una vez más, al criterio mayori-tario, según éste se refleja en la votación sobre la ponencia circulada. Precisamente, una de las virtudes del sistema actual es que éste permite la distribución objetiva de los recursos, evitando así la indeseable práctica que tanto se *468 criticó a Jueces Presidentes anteriores de asignarse las opiniones más importantes, cosa que en el pasado se ha conocido como il boccato di cardinále.
Durante los veinticinco años que hemos formado parte de este Tribunal, el método que hemos descrito es el que todos los Jueces Presidentes han utilizado. Éste ha funcio-nado adecuadamente a través de los años, aún ante las variaciones en la composición de los miembros de este Tribunal. En la medida en que una mayoría del Tribunal se abstrae de esa realidad al enmendar la Regla 5(a) y, por lo tanto, parte de una premisa falsa, nos vemos obligados a concluir que su proceder no es otra cosa que un ejercicio arbitrario de poder.
Por otro lado, en la propia Resolución que hoy se aprueba se indica que el nuevo método de asignación de opiniones rige únicamente en el Tribunal Supremo de Es-tados Unidos y en cuatro estados. Es decir, la mayoría del Tribunal ha optado por asimilar nuestro procedimiento in-terno de asignación de opiniones a uno que ha sido recha-zado por la inmensa mayoría de los Tribunales Supremos estatales, específicamente, un 92%. Lógicamente, si la ten-dencia en Estados Unidos ha sido apartarse del sistema que hoy se adopta en este Tribunal, ello se ha debido a las consecuencias operacionales que genera su implantación.
Asimismo, la mayoría del Tribunal pasa por alto que la enmienda efectuada a la Regla 5(a) resulta del todo incompatible con el contexto tradicional y actual del proceso de disposición de casos en nuestro Tribunal y es ajena a nues-tra realidad jurídica. A diferencia del método que tradicio-nalmente se ha seguido en nuestro Foro, en el Tribunal Supremo de Estados Unidos y en las cuatro jurisdicciones donde rige el sistema en controversia, la asignación de los casos ocurre después que se celebra una vista oral. En esas jurisdicciones, distinto a la nuestra, después que se celebra dicha vista oral, los Jueces se reúnen en una conferencia en la que discuten el caso en los méritos y exponen sus *469 respectivos puntos de vista. Es en ese momento, cuando ya se tiene un panorama claro de los méritos de la controver-sia presentada y cada Juez puede emitir un voto a la luz de ello, que opera la disposición reglamentaria que hoy se adopta. En otras palabras, la regla en cuestión sólo se ac-tiva luego de que todos los miembros del Tribunal han es-cuchado a las partes en una vista oral. De ello, precisa-mente, es que se deriva el mayor beneficio de la disposición aludida, cosa que errónea y expresamente se descarta en la Resolución que se aprueba hoy.
La concesión de vistas orales no ha sido, desafortunada-mente, la tradición de este Foro, lo que se ignora al adoptar la nueva Regla 5(a), supra. No debemos olvidar la utilidad que tiene la celebración de una vista oral en cuanto a ga-rantizar el debido proceso de ley de las partes y la trans-parencia del procedimiento judicial. Es por esa razón que en el pasado hemos favorecido las vistas orales.
En vista de esto, no hallamos beneficio futuro alguno en la enmienda efectuada a la Regla 5(a) de nuestro Regla-mento, supra. En esencia, ésta sólo trasplanta a nuestro Reglamento un injerto derivado del sistema de asignación de opiniones que por uso y costumbre se ha seguido en el Tribunal Supremo de Estados Unidos y en un número mí-nimo de jurisdicciones estatales. A nuestro juicio, su adop-ción constituye otro desacierto de la mayoría que “este Tribunal lamentará según sus miembros actuales vayan haciendo camino con el pasar de los años”. (Enfasis suplido.) In re Reglamento del Tribunal Supremo, 118 D.RR. 279, 282 (1987), opinión disidente del Juez Asociado Señor Rebollo López.
II
Por otra parte, aun cuando no tenemos objeción en cuanto al texto de la enmienda adoptada por el Tribunal *470 respecto al inciso (b) de la Regla 5 del Reglamento de este Foro, nos vemos obligados a precisar el porqué de esto.
De entrada, es menester señalar que, al igual que la anterior Regla 5(b), la nueva regla establece los términos aplicables a la circulación de ponencias y permite que una mayoría del Tribunal decida acortar los términos regla-mentarios para disponer de un caso, en atención a la natu-raleza de éste. 4 L.P.R.A. Ap. XXI-A. Cuando esto último ocurra, la regla reconoce que los Jueces podrán reservarse el derecho a emitir una ponencia luego de que se haya cer-tificado la decisión del Tribunal. Id.
Para hacer viable dicha reserva, tanto la nueva regla como la anterior disponen que el Juez que desee acogerse a ésta deberá notificar] o, luego de lo cual tendrá diez días para circular su ponencia. Una vez se circula dicha ponen-cia, los otros Jueces tendrán un término de cinco días para expresar su opinión sobre ésta. Según lo dispuesto en la Regla 5(b), supra —tanto en su texto anterior como en el que hoy se adopta— una vez concluye ese término de cinco días para expresarse sobre la primera ponencia no podrán emitirse expresiones ulteriores. Es decir, la Regla 5(b) no permite extender los términos establecidos en ella para po-sibilitar una réplica a aquellas ponencias emitidas en res-puesta a la primera ponencia. Ello surge explícitamente de la letra clara de la referida disposición, la cual establece que “[s]imultáneamente concluidos estos términos, se cer-tificarán todas las ponencias o expresiones y, desde ese mo-mento, no se certificará ninguna otra ponencia o expresión sobre el caso”. Id.
Ciertamente, la posibilidad de acortar los términos re-glamentarios en un caso determinado para dar lugar al derecho de reserva disponible en la referida Regla 5(b), constituye una excepción que debe ser empleada con pru-dencia, sólo en atención a la naturaleza singular del caso. El procedimiento interno de circulación de opiniones en este Tribunal, como último intérprete de la Constitución y *471 de las leyes de nuestro país y como foro responsable de establecer precedentes jurídicos, debe proveer holgura para la deliberación y el consenso que debe caracterizar un foro colegiado. Sólo así el parecer de cada uno de sus miem-bros tendrá espacio para madurar y, a su vez, las opiniones endosadas por una mayoría del Tribunal podrán ser el re-flejo de una decisión ponderada y enriquecida por la diver-sidad de criterios. En la medida en que la Regla 5(b), supra permite acortar los términos y apresura el proceso deciso-rio del Tribunal, ésta se desvía del curso ordinario que ha de seguirse en un foro como el nuestro. Por eso, su aplica-ción, además de ser excepcional, debe ceñirse estricta-mente a los términos dispuestos en el reglamento.
Ahora bien, a diferencia de la anterior Regla 5(b), la nueva regla dispone en su penúltimo párrafo que, aún en aquellos casos en que se acorten los términos reglamenta-rios, todas las ponencias deberán circularse entre todos los integrantes del Tribunal antes de ser certificadas. Es decir, la aprobación de la nueva enmienda obedece a que del texto de la anterior Regla 5(b) no surgía el requisito de circular las ponencias suscritas en respuesta a aquella opi-nión avalada por una mayoría del Tribunal cuando se haya decidido acortar los términos reglamentarios.
Sobre este particular, la mayoría del Tribunal hace re-ferencia a la segunda oración del segundo párrafo de la Regla 5(b) para sostener que ésta es supuestamente clara en cuanto al requisito de circulación de ponencias en toda circunstancia. No obstante, al así hacerlo se ignora el he-cho de que esa disposición se refiere a la circulación de ponencias dentro de los términos ordinarios de votación. La primera oración de dicho párrafo, la cual se omite al citar la disposición aludida en la Resolución, indica que cuando un juez o una jueza no haya votado o emitido po-nencia alguna dentro de los términos dispuestos en el primer párrafo, se podrá certificar la ponencia y se hará cons-tar su no intervención. Contrario a lo que se señala en la *472 Resolución que emite el Tribunal hoy, de una lectura inte-grada de la Regla 5(b) se deduce que la anterior disposición sólo aplica en el contexto de la circulación de ponencias dentro de los términos ordinarios. En esas circunstancias, impone un requisito de circular las ponencias para que to-dos los Jueces tengan la oportunidad de emitir su voto.
El propósito de esta norma es evitar que se haga constar que un Juez o una Jueza no intervino, cuando realmente no votó porque la ponencia no le fue circulada. Es en ese contexto de circulación dentro de los términos reglamenta-rios ordinarios que aplica la referida disposición. Clara-mente, ello es distinto a aquellas situaciones extraordina-rias en las que se acortan los términos, lo que se atiende al final de la Regla 5(b), supra.
Evidentemente, la enmienda efectuada hoy a la Regla 5(b) en efecto valida la posición sostenida por nosotros, por la compañera Jueza Asociada Señora Fiol Matta y por la compañera Juez Asociada Señora Rodríguez Rodríguez al disentir en Domínguez Castro et al. v. E.L.A. I, 178 D.P.R. 1 (2010). En esa ocasión, la mayoría del Tribunal decidió acortar los términos reglamentarios para disponer del caso que decretó la constitucionalidad de la Ley Núm. 7 de 9 de marzo de 2009. Por discrepar del trámite judicial seguido en dicho caso —pues no permitió la presentación de la prueba necesaria para resolverlo adecuadamente— suscri-bimos las opiniones disidentes correspondientes, las cuales nos propusimos certificar junto con la opinión del Tribunal. Ante ello, algunos miembros de este Foro mostraron incon-formidad e, incluso, expresaron que nuestra actuación era contraria al Reglamento del Tribunal.
No obstante, la realidad es que ese señalamiento no en-contraba apoyo alguno en nuestro Reglamento, pues éste nada disponía en cuanto al requisito de circulación de po-nencias en las circunstancias en que se acorten los térmi-nos reglamentarios. Prueba de esto es la propia enmienda *473 efectuada hoy a la Regla 5(b) de nuestro Reglamento, supra, la cual, en esencia, constituye una admisión, por parte de aquellos miembros del Tribunal que objetaron en aquel momento, de que su crítica era infundada. Así, pues, nos satisface que al adoptar esta enmienda se reconozca que, contrario a lo aseverado entonces, nuestra actuación no es-tuvo al margen del Reglamento. Con la referida enmienda queda vindicado nuestro proceder al suscribir la opinión disidente en Domínguez Castro et al. v. E.L.A. I, supra.
Ante esta realidad, sin embargo, los mismos compañe-ros Jueces intentan justificar su postura errada al ampa-rarse en la disposición contenida en el segundo párrafo de la Regla 5(b), la cual, según discutimos, es inaplicable a lo ocurrido en Domínguez Castro et al. v. E.L.A. I, supra. Peor aún, en su intento fútil por salvar lo insalvable, incurren en una contradicción absurda al expresar que ££[l]a en-mienda al texto de la regla es aclaratoria y, por consi-guiente, no cambia la norma imperante”. (Enfasis suplido.) Resolución, pág. 462.
Ciertamente —por definición— las enmiendas(1) se rea-lizan para modificar las normas existentes, por lo que, ne-cesariamente, el resultado de una enmienda será un cam-bio, ya sea algo añadido, eliminado o reemplazado en la disposición anterior. Por lo tanto, la aseveración de la ma-yoría a esos efectos resulta incompatible con los propósitos de una enmienda. Nos preguntamos si, en este sentido, la Resolución del Tribunal tendrá efecto alguno en los proce-sos de este Foro, pues según se asevera en su texto, ésta no cambia nada.
*474 III
En conclusión, la enmienda realizada a la Regia 5(a) del Reglamento de este Tribunal, supra, no goza de justifica-ción alguna ni resuelve un problema con el método que, por más de dos décadas, ha seguido este Tribunal. Por su parte, la enmienda efectuada a la Regla 5(b) sirve el pro-pósito de incorporar un aspecto cuya ausencia ocasionó en el pasado interpretaciones claramente erradas. Es ésta, únicamente, su razón de ser.

El proceso de enmendar el Reglamento de este Foro no puede tomarse livianamente, sino que debe responder a un ejercicio de cuidadosa circunspección, como ha sido nuestra tradición hasta hoy, y no a un mero capricho de modificar la regla existente simplemente porque haya cuatro votos para endosarlo. A la larga, es nuestra Institución la que sufre y se desprestigia ante el país. Para quienes hemos dedicado nuestra vida al servicio de este Tribunal, es suma-mente preocupante lo ocurrido. Por eso, no podemos perma-necer callados.

En vista de esto, no podemos avalar con nuestro voto el errado proceder de la mayoría de este Tribunal de enmen-dar nuestro Reglamento. Por lo tanto, disentimos.
— O —

 Según el diccionario, “enmienda” significa, entre otras cosas, “[alcción y efecto de enmendar”; “[plropuesta de variante, adición o reemplazo de un proyecto, dictamen, informe o documento análogo”, y “[e]n los escritos, rectificación perceptible de errores materiales, la cual debe salvarse al final”. Real Academia Española, Diccionario de la Lengua Española, 22da ed., Madrid, Ed. Espasa Calpe, 2001, T. I, pág. 921.